# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **CAROLYN GIUMMO and ANTHONY S. HILL, SR., Individually, and as Surviving Parents and as Personal Representatives of the Estate of ANTHONY S. HILL,** **Plaintiffs,** v. **ROBERT OLSEN, individually and in his official capacity as a law enforcement officer for the DeKalb County Police Department; CEDRIC L. ALEXANDER, individually and in his official capacity as DeKalb County Deputy Chief Operating Officer of the Department of Public Safety; and JAMES W. CONROY, individually and in his official capacity as DeKalb County Interim Chief of Police,** **Defendants.** | **CIVIL ACTION NO.** **JURY TRIAL DEMANDED** |

## COMPLAINT

COME NOW Plaintiffs CAROLYN GIUMMO and ANTHONY S. HILL,

SR., Individually, and as Surviving Parents and as Personal Representatives of the

Estate of ANTHONY S. HILL (Deceased) (collectively, "Plaintiffs"), by and

through their undersigned counsel, who file this Third Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 15 against Defendants ROBERT E. OLSEN, III, individually and in his official capacity as an officer of the DeKalb County Police Department (hereinafter, "OLSEN"), CEDRIC L. ALEXANDER, individually and in his official capacity as DeKalb County Deputy Chief Operating Officer of the Department of  Public Safety (hereinafter "ALEXANDER"); and JAMES W. CONROY, individually and in his official capacity as DeKalb County Interim Chief of Police (hereinafter "CONROY") (collectively referred to as "Defendants"), alleging and stating as follows:

## INTRODUCTION

1.

This is an action for damages arising from the wrongful and unconstitutional shooting death of ANTHONY S. HILL, an unarmed civilian and veteran of the United States Air Force, by Officer ROBERT OLSEN, a police officer with the DeKalb County Police Department (hereinafter "DKPD") on March 9, 2015. Defendants ALEXANDER and CONROY, maintained policies, customs and practices which failed to adequately train and supervise DKPD police officers in the use of force, instead emphasizing military-style policing techniques. Defendants ALEXANDER and CONROY also failed to provide DKPD officers with essential training necessary to handle foreseeable encounters with non-violent citizens suffering from mental illness. Indeed, Officer OLSEN *admitted in sworn testimony before the grand jury that he was inadequately trained* to deal with the situation he encountered with ANTHONY S. HILL. Combined with the increasing "militarization" of the DeKalb County police force, this lack of training foreseeably and inevitably resulted in a pattern of constitutional violations, including the killing of ANTHONY S. HILL ("Mr. HILL"). In addition to systemic practices and policies of DEKALB COUNTY, Defendants ALEXANDER and CONROY failed to take remedial action against Defendant OLSEN despite his repeated, documented and escalating instances of aggressive,

unprofessional and unlawful actions, which culminated in the shooting of Mr.

HILL.  Together, this ongoing pattern and practice of Defendants ALEXANDER

and CONROY resulted in the deprivation of DeKalb County citizens' – including

Mr. HILL's -- constitutional rights in violation of 28 U.S.C. § 1983.  At a

minimum, Defendants ALEXANDER and CONROY were deliberately indifferent

to Mr. HILL's constitutional rights, resulting in his death at the hands of Defendant

OLSEN.

2.

ANTHONY S. HILL was a veteran of the United States Air Force and

served with U.S. forces in Afghanistan.  Mr. HILL was medically and honorably

discharged from the military, and returned to civilian life in DeKalb, Georgia.

3.

On March 9, 2015, Mr. HILL experienced a non-violent mental episode

emanating from a mental disorder developed while serving in the military.  A 911

call for emergency medical assistance was made.  Mr. HILL was unarmed,

unclothed, and was displaying no signs of aggression.

4.

Officers of the DEKALB COUNTY Police Department, including OLSEN,

responded to the 911 call.  OLSEN, as a result of Defendants ALEXANDER and

CONROY's policies and practices which exhibited deliberate indifference to the

constitutional rights of DeKalb County citizens, used illegal and excessive force without justification, opening fire and killing Mr. HILL with two hollow point bullets. At no time before or during the shooting did Mr. HILL present a threat to OLSEN or anyone else.

5.

Mr. HILL's violent death was the direct result of policies and practices of Defendants ALEXANDER and CONROY. Specifically, Defendants ALEXANDER and CONROY failed to implement adequate policies and procedures for responding to calls for service involving citizens exhibiting traits of a mental or psychological disorder. Further, Defendants ALEXANDER and CONROY failed to provide adequate training in the use of lethal force and alternatives to lethal force, including allowing Defendant OLSEN to wear his only lethal weapon on the side of his body corresponding to his dominant hand. Finally, Defendants ALEXANDER and CONROY hired and retained Defendant OLSEN despite repeated instances of unlawful and aggressive behavior. Mr. HILL died because of these failures in Defendants ALEXANDER and CONROY policies, customs, and practices. As such, all named Defendants are legally responsible for Mr. HILL's death.

6.

Plaintiffs demand a jury trial and seek an award of economic, compensatory and punitive damages, as well as an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Plaintiffs also assert supplemental state law claims.

**JURISDICTION AND VENUE**

7.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution. This Court has jurisdiction over all causes of action set forth in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1343(a)

8.

Moreover, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as they are part of the same case or controversy for the purposes of Article III of the United States Constitution.

9.

Venue properly lies in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b) because at least one Defendant resides within this judicial district and all Defendants are

residents of the State in which this district is located, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

10.

At all times relevant to this action, ANTHONY S. HILL (deceased) was a citizen and resident of DeKalb County, Georgia.  Mr. HILL was an adult citizen of the United States of America residing in DeKalb County, Georgia. As such, Mr. HILL was entitled to exercise all of the rights and privileges provided by the Constitutions of the State of Georgia and the United States of America, including the Fourth Amendment.

11.

At all times relevant to this action, CAROLYN GUIMMO, Personal Representative of the Estate of ANTHONY S. HILL, was the natural and legal mother of Mr. HILL, and an individual citizen residing in Moncks Corners, Berkley County, South Carolina. CAROLYN GUIMMO was unmarried at the time of her son's death.

12.

At all times relevant to this action, ANTHONY S. HILL, SR., the surviving natural and legal father of Mr. HILL, was an individual residing in Evergreen Park, Cook County, Illinois.

13.

Mr. HILL's parents, CAROLYN GUIMMO and ANTHONY S. HILL, SR., are his closest living family members and heirs. Mr. HILL was never married and died without a wife. Mr. HILL died without issue.

14.

Plaintiffs CAROLYN GIUMMO and ANTHONY S. HILL, SR., as surviving parents of ANTHONY S. HILL, and as the duly appointed Personal Representatives of the Estate of ANTHONY S. HILL, deceased, have standing to bring this lawsuit as a result of multiple violations of ANTHONY S. HILL's rights as guaranteed by the United States Constitution and the Constitution of the State of Georgia.

15.

At all times relevant to this action, Defendant ROBERT OLSEN was a police officer employed by DeKalb County, working as a law enforcement officer for DKPD, and acting within the scope and in furtherance of his employment.

16.

Defendant OLSEN, at all times relevant to this Complaint, was acting under the color of law, statutes, regulations, customs, practices and usages of DeKalb County.

17.

Defendant OLSEN, without legal cause or excuse, used unlawful and excessive force against Mr. HILL, killing Mr. HILL in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He is sued both in his individual and official capacities for compensatory and punitive damages.

18.

At all times relevant to this action, the unlawful acts, edicts and practices alleged in this Complaint represent the official policies or decisions promulgated by DeKalb County or visited pursuant to custom and practice.

19.

DeKalb County is now, a body corporate as defined by O.C.G.A. § 36-1-3 and is a governmental subdivision of the State of Georgia. DeKalb County is a governmental unit responsible under State law for properly maintaining, operating, and funding the DKPD. At all times relevant to this action, DeKalb County acted through the DKPD and various other employees and officials of the DKPD and DeKalb County. The unlawful acts, edicts and practices alleged in this Complaint

represent the official policies or decisions promulgated by DeKalb County or visited pursuant to DeKalb County custom and practice.

20.

The DeKalb County Board of Commissioners, a body politic as to DeKalb County. The Board is a governmental unit responsible under State law for properly maintaining, operating, and funding the DKPD. At all times relevant to this action, the Board acted through the DKPD and various other employees and officials of DeKalb County. The unlawful acts, edicts and practices alleged in this Complaint represent the official policies or decisions promulgated by the Board or visited pursuant to the Board's custom and practice.

21.

Defendant CEDRIC L. ALEXANDER is and at all times pertinent to this Complaint was the DeKalb County Deputy Chief Operating Officer of Public Safety.  Prior to serving as Deputy Chief Operating Officer of Public Safety, ALEXANDER was named in early 2013 as the DeKalb County Police Department's Chief of Police.

22.

ALEXANDER had and has final authority concerning the affairs and operations of the DKPD, including DKPD's policies and procedures. According to DeKalb County's website, ALEXANDER "is the Chief Administrator of the Police Department and is responsible for policy development, control, supervision, and program implementation." ALEXANDER was acting as an official of DeKalb County within the scope of his duties and under the color of laws, statutes, regulations, customs, practices and usage of DeKalb County and the State of Georgia. The unlawful acts, edicts and practices alleged in this Complaint represent the official policies or decisions promulgated by ALEXANDER or visited pursuant to custom and practice. He is sued individually and in his official capacity.

23.

In December 2014, President Obama appointed ALEXANDER to an eleven (11) member "Task Force on 21st Century Policing" (the "Task Force"). The Task Force "was created to strengthen community policing and trust among law enforcement officers and the communities they serve". The Task Force issued its final report in May 2015. *Final Report of The President's Task for on 21st Century Policing* (May 2015) (available at

http://www.cops.usdoj.gov/pdf/taskforce/taskforce_finalreport.pdf).

24.

The troubling lack of, or indifference to the need for policies and procedures identified by the Task Force directly apply to this case, and are directly linked to Defendants' violations of Mr. HILL's constitutional rights foreseeable, as alleged below.

25.

Defendant JAMES W. CONROY was named the Interim Police Chief for the DeKalb County Police Department in December 2013 and continues in that role to the present. In that role, CONROY had and has day-to-day authority concerning the affairs and operations of the DKPD, including DKPD's policies and procedures. Defendant CONROY was acting as an official of DeKalb County within the scope of his duties and under the color of laws, statutes, regulations, customs, practices and usage of DeKalb County and the State of Georgia. The unlawful acts, edicts and practices alleged in this Complaint represent the official policies or decisions promulgated by CONROY or visited pursuant to custom and practice. He is sued individually and in his official capacity as DeKalb County Interim Chief of Police.

26.

Collectively, Defendants, ALEXANDER, CONROY, are the final decision makers for law enforcement policies and procedures, as well as for hiring and discipline matters, for the DeKalb County Police Department.

**FACTUAL BACKGROUND**

**Mr. HILL Was a Law-Abiding Veteran Suffering from Post-Traumatic Mental Illness.**

27.

Mr. HILL served this country as a member of the United States Air Force. His latest deployment was in Afghanistan. Following that deployment, Mr. HILL was medically discharged. He suffered from bipolar disorder and post-traumatic stress disorder, conditions for which he was undergoing treatment.

28.

Mr. HILL was 26 years of age, actively pursuing a career in music, and had a loving relationship with his girlfriend and family. Mr. HILL had no prior criminal history.

29.

Mr. HILL was active on social media, using his voice to raise awareness for those in the community living with mental illness.

**Defendants Were on Notice of Propensity for Police Encounters with Mentally Ill Citizens.**

30.

It is commonly known among law enforcement administrators and officers in major metropolitan areas, including DeKalb County, that more than ten percent of U.S. citizens experience some degree or designation of mental illness or psychological disorder.

31.

The Atlanta Veterans Administration Medical Center is located on Clairmont Road in Decatur, Georgia which is also in DeKalb County.

32.

It was well known, or should have been well known, to Defendants on March 9, 2015 that veterans of past or current wars face a greater propensity for clinical diagnosis of mental or psychological disorder upon returning home from war.   Up to thirty-one percent of U.S. veterans of the Iraq and Afghanistan wars suffer from Post-Traumatic Stress Disorder ("PTSD") within one year of returning from deployment.

33.

It was well known, or should have been well known, to Defendants on March 9, 2015 at the time of Mr. HILL's shooting death, that American veterans of past and present wars reside in the greater metropolitan Atlanta area, including DeKalb County.

34.

It was well known, or should have been well known, to Defendants on March 9, 2015 at the time of Mr. HILL's shooting death, that American veterans of past and present wars residing in the greater metropolitan Atlanta area frequent DeKalb County to visit and/or be treated at the Veterans Administration Medical Center in DeKalb County.

35.

It was well known, or should have been well known, to Defendants on March 9, 2015 at the time of Mr. HILL's shooting death, that due to the deinstitutionalization of mental health in the 1960s and the federal funding cuts to mental health funding, police officers now are often the most initial common responders engaging citizens experiencing a mental health episode.

**Defendants Knew that Training Police to Deal with the Mentally Ill Is Critical to Acceptable and Lawful Outcomes**.

36.

In light of these facts, there was an obvious need to train DKPD officers to deal with non-violent encounters with mentally ill citizens. Defendants knew or should have known that proper training of police officers regarding an encounter with an unarmed mentally ill citizen will often determine whether the encounter ends in life or death for the mentally ill patient.

37.

Use of force by law enforcement officers interacting with mentally ill citizens exceeds that of law enforcement officer interactions with citizens who do not suffer from a mental illness.

38.

Anticipating these types of encounters with law enforcement and mentally ill citizens, many police departments and law enforcement administrators and officials develop, implement, and re-enforce services and trainings such as the Crisis Intervention Team ("CIT") model to enhance officers' interactions with individuals with mental illnesses, train their officers regarding de-escalation when encountering citizens suffering from PTSD and various mental health conditions, aid departments in installing policies within police departments for safely handling encounters with the mentally ill, and to improve the safety of all parties involved in the mental health crises.

39.

Indeed, Defendant ALEXANDER was specifically aware of this issue, and the constitutional violations giving rise to this litigation were foreseeable. In the May 2015 Final Report of the Task Force, the committee on which ALEXANDER sat found that:

> One specific method of increasing the quality of training would be to ensure that Peace Officer and Standards

Training (POST) boards include mandatory Crisis Intervention Training (CIT), which equips officers to deal with individuals in crisis or living with mental disabilities, as part of both basic recruit and in-service officer training—as well as instruction in disease of addiction, implicit bias and cultural responsiveness, policing in a democratic society, procedural justice, and effective social interaction and tactical skills.

**Defendants Failed to Provide Necessary and Foreseeable Training Regarding Encounters with the Mentally Ill**.

40.

Defendants knew or in the exercise of due diligence should have known on March 9, 2015 that police officers under their command needed more specialized training to be equipped to deal with the mentally ill while in the course of their duties.

41

Defendants ALEXANDER and CONROY failed to provide officers in the DKPD with this necessary and foreseeable training to prepare them for encounters with non-violent members of the public who are suffering from a mental illness.

42.

Although DKPD has a "use of force" policy, Defendant OLSEN was inadequately trained with respect to that policy, especially as it relates to

encounters with the mentally ill.  Among other things, Defendant OLSEN's non-lethal weapons, such as his Taser, were worn on his right side, consistent with DeKalb County policy.  Defendant OLSEN was left-handed, and the only weapon available to him on his left side was his gun.  Defendant OLSEN is left-handed. Defendant OLSEN was ultimately found to have violated DKPD's use of force policy.

43.

Indeed, Defendant OLSEN testified before a DeKalb County civil jury that Defendants ALEXANDER and CONROY failed "to train him and the other officers in the Department in identifying and deciphering nonviolent or nonaggressive psychological episodes versus the threat of a potentially violent encounter with a citizen" exhibiting irrational behavior.

44.

In light of obvious need to train police officers to deal with non-violent mentally ill citizens, Defendants ALEXANDER and CONROY's failure to adequately train DKPD officers in this area amounted to deliberate indifference to the rights and safety of DeKalb County citizens.

45.

In a report published in March 2015, it was announced that fewer than 10 percent of DeKalb County police officers get specialized training in dealing with the mentally ill, and less than 1 percent are certified in crisis intervention.

**The DKPD'S "Militarization" of the Police, Systemically Designed to Violate Citizen's Constitutional Rights**.

46.

Not only did DeKalb County officers lack essential training in interacting with the community, including the mentally ill, DeKalb County, on information and belief, joined the national trend among police forces to "militarize" its police force.

47.

As part of the 1997 National Defense Authorization Act, Congress enacted section 1033 which created the Department of Defense Excess Property Program in Support of U.S. Law Enforcement Agencies, codified at 10 U.S.C. § 2576a (the "Section 1033 Program").

48.

The 1033 Program, launched in the late 1980s during the height of the so-called "War on Drugs," authorizes the Department of Defense to transfer military equipment to local law enforcement agencies. The Defense Logistics Agency's Law Enforcement Support Office, whose motto is "from warfighter to crime

fighter", has transferred $5.1 billion worth of equipment through the 1033

Program.  Today, the 1033 Program includes more than 17,000 federal and state

law enforcement agencies from all U.S. states and territories. The amount of

military equipment being used by local and state police agencies has increased

dramatically—the value of equipment transferred through the Program went from

$1 million in 1990 to $324 million in 1995 and to nearly $450 million in 2013.

49.

Indeed, in yet another signal that the DKPD is hastening its transformation

towards militarization, in February 2016 it was announced that the force was

transitioning to the 9mm Glock handgun "for precision and technological

advances".  The Glock, it was reported, has less of a recoil and a customized grip

to fit any size hand so officers will "be able to put the weapon back on target as

quickly as they can."  The new weapons are reportedly being made available to

DeKalb County at no cost.

50.

According to 2014 testimony before the United States House of

Representatives Oversight and Investigations Subcommittee of the U.S. House

Armed Services Committee, the 1033 Program runs counter to "foster[ing] a

policing culture that honors its mission to protect and serve," and instead fosters a

police culture that "wage[s] war."

51.

Defendant ALEXANDER was specifically aware of the problem of police militarization.  In the May 2015 Final Report of the Task Force on which ALEXANDER sat, the Task Force concluded that:

> In police work, the vast majority of an officer's work is done independently outside the immediate oversight of a supervisor. But consistent enforcement of rules that conflict with a military-style culture, where obedience to the chain of command is the norm, is nearly impossible. Behavior is more likely to conform to culture than rules.

52.

Despite this specific knowledge of the problems with police militarization, Defendants ALEXANDER and CONROY were deliberately indifferent to the problem and failed to take any remedial action.

53.

Plaintiffs' counsel served DeKalb County with a request for documents and information pursuant to the Georgia Open Records Act, O.C.G.A. §§ 50-18-70, *et seq*., seeking information regarding DeKalb County's participation in the Section 1033 Program.  DeKalb County has not yet responded.

54.

Consistent with this "militarization" of the police force, which created and encouraged an atmosphere and culture adversity between police and citizens rather than service, DeKalb County police officers – including OLSEN – were also encouraged to initiate confrontation without probable cause.  In a Performance Management Appraisal dated December 2, 2008, Defendant OLSEN was praised and recommended for a promotion where it was found that he "conducts self-initiated stops on vehicles and suspicious persons".

55.

Likewise, in a Performance Management Appraisal dated July 30, 2012, Defendant OLSEN was commended as "one of the more productive officers on our watch" in part because he conducted "1469 self- initiated stops."

**Inadequate Training by DEKALB COUNTY in Use of Lethal Force.**

56.

Compounding the potentially catastrophic circumstances brought about by the "militarization" of the DKPD, Defendants ALEXANDER and CONROY also failed to adequately train officers in the use of lethal force.

57.

Defendant OLSEN began employment with the DKPD in January 1998 as a police officer.

58.

Of the approximate 1,948 hours of training OLSEN received during his seven-year tenure with the DKPD, he had only seven hours of training in the use of deadly force.

59.

At all times relevant to this action, the Defendants ALEXANDER and CONROY, acting through the DKPD, had issued Defendant OLSEN a firearm for use in his law enforcement duties for the DKPD. As such, Defendants had actual knowledge of OLSEN's possession and use of the lethal firearm.

60.

At all times relevant to this action, Defendants ALEXANDER and CONROY, acting through the DKPD, also issued Defendant OLSEN non-lethal weapons for use in his law enforcement duties, including but not limited to an expandable baton, a canister of pepper spray, and a Taser.  These non-lethal weapons were worn by Defendant OLSEN on his right side.  The only weapon on his left – and OLSEN was left-handed – was his gun.

61.

Defendant OLSEN was not even certified in the use of a Taser.

62.

Prior to March 9, 2015, Defendant OLSEN had received reprimands due to his unprofessional and aggressive interactions with the public. Despite the knowledge of his superiors of these repeated offenses of aggression and hostility on the part of Defendant OLSEN, and despite his superiors' recommendations that he receive more training in sensitivity and possibly anger management, Defendants ALEXANDER and CONROY allowed Defendant OLSEN to patrol the streets of DEKALB COUNTY alone and armed with a lethal weapon.

63.

As alleged above, in a civil grand jury hearing in or about October 2015, OLSEN testified under oath and cast the blame for the shooting on the DKPD, alleging that the Department failed to sufficiently train him and other officers in the Department regarding non-violent encounters with unarmed persons experiencing a psychological episode.

64.

The persistent and wide-spread practices of DKPD police officers, including Defendant OLSEN, was created by Defendants ALEXANDER and CONROY and represent official policy.  This policy included, but was not limited to inadequate training and inadequate supervision.

**Defendants ALEXANDER and CONROY Failed to Address Defendant OLSEN's Pattern of Violating Citizen's Constitutional Rights**.

65.

Defendant OLSEN had an extensive and well-documented history of aggressive and unprofessional conduct as a police officer for the DKPD, which exhibited a pattern of violating the constitutional rights of DeKalb County citizens. The DKPD and DeKalb County officials knew of Defendant OLSEN's escalating pattern of unlawful conduct yet failed to take remedial action.

66.

On December 2, 2009 the DKPD fielded a complaint from a civilian bearing the initials "M.L.", which resulted from a traffic stop conducted by OLSEN. M.L. reported that OLSEN was behaving "erratic[ally]", and used foul, profane and offensive language toward her. OSLEN "insisted [M.L.] get out of the car and get on the floor." M.L. ultimately had to call 911 during her encounter with OLSEN because she "feared for [her] life", according to her complaint to the DKPD.

67.

An internal investigation report dated December 16, 2009 reported that Defendant OLSEN denied using profanity until confronted with the audio recording proving that he had. Three other Sergeants in the DKPD corroborated OLSEN's false statement that he had not used profanity. All four statements by DKPD officers were proven to be false only because there was an audio recording.

68.

DeKalb County on January 7, 2010 "sustained" the complaint by M.L. DeKalb County Internal Affairs policy states that "sustained" means that an "investigation disclosed *sufficient evidence to clearly prove the allegations* made in the complaint." (Emphasis added).

69.

Defendants ALEXANDER and CONROY's response to these alarming and disturbing events was to reprimand OLSEN on January 20, 2010 with "**written counseling** for your violation of the DeKalb County Police Department Employee Manual, Section 2-2.12, Professional Image."  (Emphasis in original).

70.

Again on July 5, 2010, the DKPD logged a Complaint against OLSEN by a civilian bearing the initials, "J. S." J.S. reported that Officer OLSEN who was rude and refused to explain why he had pulled J.S. over on a traffic stop.  J.S. also reported that OLSEN refused to answer his questions and threatened to take him to jail.

71.

Not only did Defendants ALEXANDER and CONROY fail to adequately address Defendant OLSEN's habitual unlawful conduct, DeKalb County officials

praised his performance and sought to advance his career during the same time period he was engaging in unlawful conduct.   On August 8, 2010, months after two documented infractions, OLSEN was recommended for "any promotion or merit increase due".  No mention of the recent reprimands was contained in the reviews.  DeKalb County then promoted OLSEN on February 11, 2011 and awarded him a raise in pay.

72.

Shortly after his promotion, another incident was reported against Defendant OLSEN by civilian "K.M." on June 13, 2011.  K.M. reported that Defendant OLSEN was being rude, speaking in an angry manner: "[A]s soon as the officer walked up to the truck he started should at [her husband] and saying he was blatant (sic) and would not even listen to what my husband was saying.  All four of us are in our fifties [and] have been law abiding citizens . . . for over thirty years".  K.M. also wrote in her statement that "I would seriously suggest enrolling him [OLSEN] in some kind of people skills course or anger management course."

73.

Following K.M.'s Complaint, Investigator "Sgt. B" of the DKPD recommended that Defendant OLSEN be required to take a sensitivity training

class or a class dealing with the public. The report stated that "this is the second incident where Officer Olsen has received a complaint about his demeanor in dealing with the public."

74.

On July 13, 2011, Lieutenant V.C. Dankewich of the DKPD North Precinct transmitted an email to Lieutenant Kevin Brown, Assistant Training Section Commander, which stated the following concerning OLSEN: "I have a guy that I need to get into a verbal judo or something similar for some people skills. He has had a couple of complaints on dealing with the public and I need to get him into any kind of class that's out there. Any ideas?"

75.

On or about April 27, 2012, Defendant OLSEN was issued a verbal warning for issuing two improper and erroneous traffic citations to a civilian motorist of Puerto Rican descent. OLSEN gave civilian motorist "A.C." an unlawful traffic citation for brake light violation and driving without a license. Both violations were found to have been issued in error because the license issued by Puerto Rico was valid, but OLSEN refused to recognize its validity. Verbal counseling was recommended by DKPD.

76.

Representative of Defendant OLSEN's lack of regard for citizens' constitutional rights, Defendant OLSEN admitted in the civil grand jury hearing that he racially profiled Mr. HILL when he engaged him.

77.

Indeed, in addition to the documented violations alleged above, Defendants ALEXANDER and CONROY were specifically aware of Defendant OLSEN's lack of training and volatility.  In a DeKalb County Performance Management Appraisal dated August 7, 2013, DeKalb County acknowledged that "Officer Olsen was placed under a great amount of stress when he was asked to take the job as the precinct Administrative Officer with little to no training or direction."

78.

The aforementioned complaints taken as a whole demonstrate Defendant OLSEN's pattern of violating citizen's constitutional rights, including an inability to control his anger, inability to deal with the public, an unreasonably aggressive demeanor of hostility, impulsive angry outbursts, threatening use of profanity, and a pattern of excessive display of authority.

79.

Defendants ALEXANDER and CONROY knew or should have known of Defendant OLSEN's history of infractions and unlawful conduct, yet failed to take

any corrective or remedial action, reflecting a County custom or policy by tacitly authorizing his actions.  At a minimum, Defendants ALEXANDER and CONROY' failure to take any remedial action in the face of Defendant OLSEN's repeated infractions and violations of DKPD rules and regulations displayed deliberate indifference towards police misconduct, resulting in Mr. Hill's death.

**Defendants ALEXANDER and CONROY's Deliberate Indifference to Violations of Constitutional Rights**.

80.

Pursuant to 28 U.S.C. § 1983, someone acting under color of state law with supervisory responsibility is liable, *inter alia*, where the supervisor was aware that problems leading to constitutional violations exist but fails to take steps to protect the public.  That is precisely the situation here.

81.

The allegations set forth above show a history of widespread abuse on the part of Defendant OLSEN.  Together with the allegations regarding lack of training with respect to mentally ill citizens, the use of lethal force and other failures to train and address a pattern of unlawful activity on the part of the DKPD, Defendants ALEXANDER and CONROY were on notice of the need to correct DKPD's conduct, but failed to do so.

82.

At a minimum, Defendants ALEXANDER and CONROY' failure to take any remedial action in the face of Defendant OLSEN's misconduct in particular, and the wide-spread lack of training in general shows a deliberate indifference to the constitutional rights of DeKalb County citizens.

83.

Taken together, Defendant OLSEN's history of infractions and unlawful activity – which escalated to and culminated in the unconstitutional shooting of ANTHONY S. HILL, put Defendants ALEXANDER and CONROY on notice of Defendant OLSEN's propensity to act unlawfully and unconstitutionally.  By failing to take adequate remedial action, Defendants ALEXANDER and CONROY tacitly condoned Defendant OLSEN's conduct.

84.

On information and belief, Defendants ALEXANDER and CONROY's policies and procedures, including deliberate indifference to the rights of citizens and a culture and history of covering up the unlawful actions of police officers, was not limited to Defendant OLSEN.  Numerous other instances of unconstitutional uses of excessive force, lethal force, and unlawful activity on the part of DEKALB COUNTY police officers exist, which Defendants ALEXANDER and CONROY endorsed or condoned through failing to take adequate remedial action.

**Defendants' Unlawful Policies and Practices Lead to the Execution-Style Death of Mr. HILL**.

85.

On March 9, 2015, Mr. HILL was lawfully residing at The Heights at Chamblee Apartment Complex, located at 3255 Chamblee Dunwoody Road, Chamblee, Georgia 30341.

86.

On information and belief, on March 9, 2015, Mr. HILL experienced a mental illness episode stemming from his PTSD and/or bipolar disorder, causing him to remove his clothing, jump from his balcony, and stumble around the parking lot of his apartment complex.

87.

Seeing Mr. HILL in the parking lot naked, looking stunned and confused, Griselle Torres, an employee in the leasing office of the apartment complex where Mr. HILL resided, placed a 911 call to request emergency medical assistance for Mr. HILL.

88.

On information and belief, Ms. Torres repeatedly called 911 because an ambulance never arrived. She finally asked the dispatcher for any help DeKalb County could offer, reiterating that Mr. HILL was not aggressive, but needed medical assistance.

89.

Although the DKPD has a crisis response team specifically to deal with the mentally ill, its hours and staff are limited, and they were not on duty at the time of Mr. HILL's episode on March 9, 2015.

90.

On information and belief, Defendant OLSEN responded to the 911 call at approximately 1:00 p.m., discovering Mr. HILL on his hands and knees approximately 180 feet away from OLSEN, who was in his squad car.

91.

Mr. HILL was not committing a crime nor did he appear to be involved in any criminal act which would threaten the safety of any person or persons in and/or around the apartment complex. To the contrary, Mr. HILL reportedly appeared to be happy and aloof. There was no evidence of excited delirium.

92.

At the time Mr. HILL was observed by Defendant OLSEN, Mr. HILL was not engaging in any conduct sufficient for a reasonable person to develop an objectively reasonable belief that he posed a threat of physical harm to the general public or Defendant OLSEN.

93.

Defendant OLSEN had no reasonable basis to believe that Mr. HILL posed a threat of physical harm to OLSEN or that OLSEN should reasonably fear for his life.

94.

Mr. HILL slowly approached OLSEN with his arms stretched wide open out to his side, showing that he was unarmed.  Mr. HILL was nude and completely exposed, and Defendant OLSEN had no reasonable basis to form the suspicion that Mr. HILL was armed or dangerous.

95.

As Mr. HILL slowly walked toward Officer OLSEN in search of medical attention, OLSEN twice told Mr. HILL to stop.

96.

Defendant Olsen made no attempt to deploy any of the non-lethal or less lethal means available to him, or choosing to stay in his vehicle and wait until back-up arrived.  Instead, Defendant OLSEN pulled out his gun, pointed it at Mr.

HILL, and opened fire leveling two hollow point bullets into Mr. HILL's neck and chest.

97.

Mr. HILL immediately fell to his knees due to the two lethal shots inflicted by Defendant OLSEN.

98.

Defendant OLSEN laid Mr. HILL on the ground on his stomach, then rolled him over onto his back. Defendant OLSEN made no effort to cover Mr. HILL's naked body, to offer him medical assistance, or to secure the scene until back-up and emergency vehicles arrived.

99.

Mr. HILL died from the gunshot wounds inflicted by Defendant OLSEN.

100.

Mr. HILL did not die instantly from his gunshot wounds, but instead suffered for a period of time before ultimately succumbing to the wounds caused by Defendant OLSEN.

101.

Mr. HILL was only five feet seven inches tall and unarmed. He weighed 155 pounds.

102.

At no time did Mr. HILL threaten Defendant OLSEN or anyone else.

103.

At no time did Mr. HILL endanger Defendant OLSEN or anyone else.

104.

At no time did Mr. HILL give Defendant OLSEN or anyone else cause to believe he was dangerous.

105.

At no time did Mr. HILL provoke Defendant OLSEN or anyone else.

106.

On information and belief, at all times relevant Defendant OLSEN had access to non-deadly force options, including but not limited to his hands, a baton, mace, and a Taser.

107.

Mr. HILL never engaged in any conduct which would permit the use of lethal force pursuant to the DeKalb County use of force guidelines.  Rather, Defendant OLSEN used lethal force as a first – not last – resort because of the training, policies and procedures fostered by DeKalb County.  In short, Defendant OLSEN was trained to kill by DeKalb County.

108.

Defendant OLSEN breached his duty to exhaust all non-deadly force options before resorting to the use of deadly force.

109.

The amount of force used in subduing Mr. HILL was far in excess of that required given that Mr. HILL had committed no criminal violations, did not possess a weapon, and was not threatening the life and safety of the Defendant OLSEN, or anyone else.

110.

The circumstances surrounding Defendant OLSEN's encounter with Mr. Hill, set forth above, were sufficiently clear that a reasonable police officer would have understood that his actions violated Mr. HILL's constitutional rights.

111.

Defendant OSLEN, however, acted in conformity with his training, which emphasized military-style confront and combat techniques at the expense of community service and crisis intervention.

**Defendants ALEXANDER and CONROY' Policies and Deliberate Indifference Caused Mr. Hill's Unconstitutional Death**

112.

Defendants' conduct alleged in this Complaint deprived Mr. Hill of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful search and seizure.

113.

Defendants ALEXANDER and CONROY were or should have been aware that prior to this incident Defendant OLSEN had been the subject of numerous prior citizen complaints demonstrating his lack of fitness and inadequate training.

114.

At all times relevant to this action, Defendants ALEXANDER and CONROY were deliberately indifferent in failing to have policies in place ensuring that their police officers were adequately trained on how to deal with members of the community who suffer from mental illness. The need for such training was obvious.

115.

The hiring, retention and supervision of Defendant OLSEN was done with deliberate indifference to Mr. Hill's rights in light of Defendant OLSEN's history of unlawful conduct and the DKPD's lack of adequate training. The negligent supervision and training of Defendant OLSEN was done with deliberate and

wanton carelessness and with conscious disregard and indifference for Mr. HILL's body, safety, life, and rights as well as for the safety and rights of the citizenry.

116.

Defendants ALEXANDER and CONROY were the final decision makers for policies, practices, customs and procedures that were the foundation for the unlawful shooting and killing of Mr. HILL. Their policies, practices, customs, and procedures were developed with deliberate indifference to the rights of Mr. HILL, Plaintiffs, and citizens.

117.

As a direct and proximate result of the aforementioned acts of COUNTY DEFENDANTS, the decedent, ANTHONY S. HILL suffered fatal injuries.

118.

On January 21, 2016, a criminal Grand Jury brought back a 6 count indictment against Officer OLSEN: 2 counts of Felony Murder, 1 count of Aggravated Assault, 2 counts of Violation of Oath by Public Officer and 1 count of Making a false Statement.

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1983: CIVIL ACTION FOR

## DEPRIVATION OF RIGHTS
## (Against Defendant OLSEN)

119.

Plaintiffs re-assert and re-allege Paragraphs 1 through 118 as if fully set forth herein verbatim.

120.

42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

121.

The Fourteenth Amendment of the United States Constitution applies the protections of the Fourth Amendment of the United States Constitution to each of the States.

122.

Section 1 of the Fourteenth Amendment of the United States reads: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law**; nor deny to any person within its jurisdiction the equal protection of the laws." (*Emphasis Added*)

123.

The Fourth Amendment of the United States Constitution states that Mr. HILL and the American people have, "**The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated**, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (*Emphasis Added*)

124.

At all times material hereto, Defendant OLSEN, acted under color of law and pursuant to official policy, customs and/or practices of the DeKalb County as a member of the DKPD, and he subjected the decedent, Mr. HILL, to the deprivation of rights and privileges secured to him by the Constitution of the United States, including the constitutional right to (1) not be deprived of his liberty, (2) due process of law, (3) be free from the use of excess and illegal force against his person, and (4) not be subjected to cruel and unusual punishment under the Fourth, Eight, and Fourteenth Amendments to the United States Constitution.

125.

At all times material hereto, Defendant OLSEN acted under color of law and with malice deliberate indifference and/or reckless, callous and gross disregard to the aforementioned rights of the decedent, Mr. HILL.

126.

Defendant OLSEN violated 42 U.S.C. § 1983 and deprived Mr. HILL of his rights pursuant to the Fourth, Eighth and Fourteenth Amendments and other guarantees of due process rights. Defendant OLSEN's violation of 42 U.S.C. § 1983 damaged Plaintiffs in an amount to be proven at trial.

127.

By illegally and egregiously shooting and killing Mr. HILL, Defendant OLSEN violated Mr. HILL's substantive due process rights and Constitutional

Rights, including but not limited to his Fourth and Eighth Amendments (as applied to the States through the Fourteenth Amendment) rights under the U.S. Constitution.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in his individual and official capacity;

- For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## COUNT II

### 42 U.S.C. § 1983: CIVIL ACTION FOR DEPRIVATION OF RIGHTS
### (Against Defendants ALEXANDER AND CONROY)

128.

Plaintiffs re-assert and re-allege Paragraphs 1 through 127 as if fully set forth herein verbatim.

129.

At all times material hereto, Defendants ALEXANDER AND CONROY were responsible for the day to day operation of the DKPD, and for adopting and implementing rules and regulations DKPD police officers.

130.

At all times material hereto, Defendants ALEXANDER AND CONROY were responsible for implementing the rules, regulations, policies, and procedures regarding hiring, screening, training, supervising, controlling, disciplining, assigning, and terminating police officers relating to their duties in the DKPD.

131.

At all times material hereto, Defendants ALEXANDER AND CONROY knew, or had they diligently exercised their official duties and used reasonable care, should have known, that the policies, procedures customs and/or usage of the DKPD, and the hiring, screening, training, supervising, controlling, disciplining, assigning and terminating of its police officers were severely deficient because of numerous complaints to DeKalb County and DKPD of, *inter alia*, cruel and unusual punishment and the use of illegal and excessive force which constituted violations of Federal Constitutional rights on the part of its police officers.

132.

At all times material hereto, Defendants ALEXANDER AND CONROY were deliberately indifferent in that they either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or discipline and/or otherwise screen employees of DKPD including, but not limited to, Defendant OLSEN, for dangerous propensities, lack of training and/or skill or other characteristics making said officer unfit to perform his duties.

133.

At all times material hereto, Defendants ALEXANDER AND CONROY were deliberately indifferent to the rights of the public, including the decedent, ANTHONY S. HILL, in that they failed to determine whether members of the DKPD, including Defendant OLSEN, posed a threat to the public as a result of his propensity to commit unlawful acts and to engage in violent activity including the use of illegal and excessive force.

134.

At all times material hereto, Defendants ALEXANDER AND CONROY, through their deliberate indifference, failed to ensure that police officers of the DKPD did not violate the constitutional and statutory rights of citizens of the State of Georgia, including the decedent, ANTHONY S. HILL, while said police officers were acting under color of state law for DeKalb County.

135.

At all times material hereto, Defendants ALEXANDER AND CONROY acted with deliberate indifference and reckless and/or callous disregard for the rights of persons, including decedent, ANTHONY S. HILL, who might be

assaulted, injured, battered or killed by police officers of the DKPD who had been inadequately trained and/or supervised and/or disciplined.

136.

Despite the notice and knowledge of Defendants ALEXANDER AND CONROY as to the dangerous propensities of DKPD officers, specifically, Defendant OLSEN, Defendants ALEXANDER AND CONROY changed policies or failed to implement policies, procedures or programs to properly train and/or discipline said officer or otherwise intentionally failed to protect the public, including decedent, Mr. HILL, from such danger.

137.

At all times material hereto, Defendants ALEXANDER AND CONROY were deliberately indifferent in the selection and/or training and/or supervision and/or control and/or disciplining and/or retention of DKPD officers, including Defendant OLSEN as an officer of the DKPD in that, *inter alia*:

- They appointed Defendant OLSEN as a police officer when they knew, or had they diligently exercised their official duties and used reasonable care, should have known, of the disposition of Defendant OLSEN to engage in such unlawful conduct in violation of official policies, customs and/or usage; and

- Despite the fact that they knew, or had they diligently exercised their official duties and used reasonable care, should have known, that this pattern of conduct pursuant to official policies, customs and/or usage was being carried out by DeKalb County police officers, including Defendant OLSEN, with deliberate indifference, malice and reckless disregard to the rights of the decedent, ANTHONY S. HILL, failed and refused to:

  - Remove police officers, including Defendant OLSEN, from his position as police officer despite repeated instances of unlawful and unprofessional conduct putting ALEXANDER AND CONROY on notice of Defendant OLSEN's propensity to engage in unlawful conduct;

  - Take any meaningful disciplinary action against police officers, including Defendant OLSEN;

  - Take steps to properly train police officers, including Defendant OLSEN, including but not limited to training regarding encounters with non-violent, mentally ill citizens; and

  - Implement proper policies and procedures to provide redress for citizens such as the decedent, ANTHONY S. HILL who was fatally injured thereby.

138.

The fatal injuries of ANTHONY S. HILL were caused by the previously alleged acts, omissions, policies or customs of Defendant ALEXANDER AND CONROY.

139.

As a direct and proximate result of the acts and omissions alleged above, in violation of the United States Constitution, Plaintiffs CAROLYN GIUMMO and ANTHONY S. HILL, SR., as Surviving Parents and Personal Representative of the Estate of ANTHONY S. HILL, deceased, claim damages for the wrongful death of ANTHONY S. HILL as allowed under the Georgia law and other damages. Such damages include the full value of life of ANTHONY S. HILL as well as funeral and burial expenses under 42 U.S.C. §§1983 and 1988 and the wrongful death statutes under Georgia law.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in his individual and official capacity;

- For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## COUNT III

### 42 U.S.C. § 1983: CIVIL ACTION FOR DEPRIVATION OF RIGHTS
### (Against Defendants ALEXANDER AND CONROY)

140.

Plaintiffs re-assert and re-allege Paragraphs 1 through 139 as if fully set forth herein verbatim.

141.

At all times material hereto, DKPD, by and through its final decision makers and/or employees, Defendants ALEXANDER AND CONROY, acting within the course and scope of their agency and/or employment, permitted and tolerated, and caused a pattern and practice of unjustified, unreasonable use of force against members of the public, including the decedent, ANTHONY S. HILL by police officers, specifically Defendant OLSEN a police officer of DEKALB COUNTY.

142.

Although such acts were improper, the Defendant OLSEN was not prosecuted and/or disciplined and/or subjected to retraining, and some of said incidents were in fact covered up with official claims that Defendant OLSEN's claims were justified and proper.

143.

As a result, DKPD police officers including Defendant OLSEN were caused and encouraged to believe that members of the public, including decedent, ANTHONY S. HILL, could be subjected to illegal and unconstitutional use of force and excessive force would in fact, be permitted and for tolerated by Defendants ALEXANDER AND CONROY.

144.

At all times material hereto, DEKALB COUNTY through its police department and officers, maintained a custom of using or permitting through deliberate indifference cruel and usual punishment and excessive force.  This custom included, but was not limited to, failing to adequately train and supervise DKPD officers.

145.

As a result of DEKALB COUNTY's customs and policies, DEKALB COUNTY citizens, including Mr. HILL, were injured, endangered, or killed by the deliberate and intentional and/or reckless misconduct of the DEKALB COUNTY police officers, including Defendant OLSEN.  In addition, serious incompetence or misbehavior was widespread and allowed to persist throughout the DEKALB COUNTY's police department, including on the part of Defendant OLSEN.

146.

At all times material hereto, DKPD purported to maintain a system to review incidents involving abuse of lawful authority such as use of cruel and unusual punishment and illegal use of force by its police officers, and complaints thereof. This system has failed to identify such unlawful conduct by its police officers, and further failed to subject police officers who employed such acts to appropriate discipline and/or supervision, and/or retraining and/or termination, to the extent that it has become the de facto policy and custom of DKPD to permit and/or tolerate such acts by its police officers.

147.

DEKALB COUNTY through Defendants ALEXANDER AND CONROY, and DKPD along with its police officers, have maintained a longstanding, widespread history of failing to properly hire, train, supervise, discipline and terminate its police officers.

148.

ALEXANDER AND CONROY have been deliberately indifferent to its police officers' – including Defendant OLSEN's -- unlawful use of cruel and unusual punishment and illegal use of force even though it had notice of this unlawful conduct by its officers.

149.

At all times material hereto, the foregoing acts, omissions, policies or customs of ALEXANDER AND CONROY caused their police officers including Defendant OLSEN, to believe that acts such as cruel and unusual punishment and illegal use of force, among other things, would not be properly monitored by supervisory officers, and would not be investigated or sanctioned, but instead would be permitted and/or tolerated, with the foreseeable result that its police officers, specifically and including Defendant OLSEN, were more likely to use cruel and unusual punishment and excessive force.

150.

At all times material hereto, decedent, ANTHONY S. HILL, was a victim of said abuses of lawful authority and said illegal acts were the direct result of the previously described acts, omissions, policies, or customs of DKPD.

151.

As a direct and proximate result of the acts described above, in violation of the United States Constitution, Mr. HILL suffered unlawful and excessive use of lethal force and was wrongfully killed.

152.

At all times material hereto, Plaintiffs, CAROLYN GIUMMO and ANTHONY S. HILL, SR. individually and as Surviving Parents and Personal Representatives of the Estate of ANTHONY S. HILL, deceased, claim damages for the wrongful death of ANTHONY S. HILL as allowed under the Georgia law and other damages. Such damages include the full value of life of ANTHONY S. HILL as well as funeral and burial expenses under 42 U.S.C. §§1983 and 1988 and the wrongful death statutes under Georgia law.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in his individual and official capacity;

-  For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## COUNT IV

### ASSAULT
### (Against Defendant OLSEN)

153.

Plaintiffs re-assert and re-allege Paragraphs 1-151 as if fully set forth herein verbatim.

154.

Defendant OLSEN's unlawful shooting and killing of Mr. HILL was intentional, egregious and without consent or provocation.

155.

An ordinary person in Mr. HILL's position that has been unlawfully fired upon would reasonably fear that he would suffer a violent injury or a harmful or offensive touching by Defendant OLSEN.

156.

Prior to being unlawfully shot and killed by Defendant OLSEN, Mr. HILL reasonably feared that he would suffer violent injury or a harmful or offensive touching by Defendant OLSEN.

157.

Mr. HILL's reasonable fear that Defendant OLSEN would cause him violent injury constituted a reasonable apprehension of a violent injury and harmful or offensive touching that amounts to common law assault.

158.

Defendant OLSEN is liable to Plaintiffs for the common law tort of assault, in an amount to be determined at trial by the enlightened conscience of the jury.

159.

O.C.G.A. § 51-2-2 provides that "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."

160.

Defendant OLSEN's egregious actions towards Mr. HILL were wanton, willful, and deliberate such that Plaintiffs should be awarded punitive damages to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in an amount to be determined at trial;

-  For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## COUNT V

### BATTERY
### (Against Defendant OLSEN)

161.

Plaintiffs re-assert and re-allege Paragraphs 1-160 as if fully set forth herein verbatim.

162.

Defendant OLSEN's unlawful shooting and killing of Mr. HILL was intentional, egregious and without consent or provocation.

163.

Defendant OLSEN's unlawful, egregious, and unconstitutional shooting and killing of Mr. HILL constituted a violent injury and harmful or offensive touching that amounted to common law battery.

164.

Defendant OLSEN is liable to Plaintiffs for the common law tort of battery, in an amount to be determined at trial by the enlightened conscience of the jury.

165.

Defendant OLSEN' egregious actions towards Mr. HILL were wanton, willful, and deliberate such that Plaintiffs should be awarded punitive damages to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in an amount to be determined at trial;

- For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## **COUNT VI**

**NEGLIGENT HIRING AND RETENTION**
**(Against Defendants, ALEXANDER AND CONROY)**

166.

Plaintiffs re-assert and re-allege Paragraphs 1-165 as if fully set forth herein verbatim.

167.

An "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. § 34-7-20.

168.

DKPD was or should have been aware that prior to this incident Defendant OLSEN had been the subject of numerous prior citizen complaints and recommendations for remedial training.

169.

Adequate scrutiny of Defendant OLSEN's background would lead a reasonable policy maker to conclude that given Defendant OLSEN's propensities, Mr. HILL's death due to the unnecessary and egregious use of deadly force should have been foreseen as the natural and probable consequence of hiring and retaining of Defendant OLSEN.

170.

DKPD failed to exercise ordinary care when it hired Defendant OLSEN and is thus liable under O.C.G.A. § 34-7-20.

171.

DKPD also failed to exercise ordinary care when it retained Defendant OLSEN despite his being the subject of prior citizen complaints and recommendations for remedial training and is thus liable under O.C.G.A. § 34-7-20.

172.

DEKALB COUNTY has direct oversight of DKPD and its employees and therefore is vicariously liable under the theory of respondeat superior for the negligent hiring and retention of Defendant OLSEN by DKPD given that Defendant OLSEN.

173.

As a direct and proximate result of ALEXANDER AND CONROY's negligent hiring and retention of Defendant OLSEN, Mr. HILL lost his life and Plaintiffs have suffered damages, which damages Plaintiffs are entitled to recover in an amount to be determined by the trier of fact, together with interest as permitted by law, reasonable attorneys' fees, and all costs of litigation.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory damages against Defendants ALEXANDER AND CONROY in an amount to be determined at trial;

-  For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

### COUNT VII

**NEGLIGENT SUPERVISION**
**(Against Defendants, ALEXANDER AND CONROY)**

174.

Plaintiffs re-assert and re-allege Paragraphs 1-173 as if fully set forth herein verbatim.

175.

An employer may be held liable for negligent supervision where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff.

176.

Here, Defendants ALEXANDER AND CONROY was or should have been aware that Defendant OLSEN prior to this incident had been the subject of numerous citizen complaints and recommendations for remedial training.

177.

The type of behavior engaged in by Defendant OLSEN included lack of professionalism and exhibiting aggressiveness.

178.

This same type of conduct on the part of OLSEN led to Mr. HILL's death and the damages to Plaintiffs.

179.

ALEXANDER AND CONROY reasonably knew or should have known of Defendant OLSEN's tendencies to use excessive force and/or lack of training, which tendencies are the direct and proximate cause of the damages suffered by Plaintiffs and therefore ALEXANDER AND CONROY are liable for its negligent supervision of Defendant OLSEN.

180.

ALEXANDER AND CONROY are thus liable to Plaintiffs for damages in an amount to be determined by the trier of fact, together with interest as permitted by law, reasonable attorneys' fees, and all costs of litigation.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory damages against Defendants ALEXANDER AND CONROY in an amount to be determined at trial;

- For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## COUNT VII

### WRONGFUL DEATH
**(Against Defendant OLSEN)**

181.

Plaintiffs re-assert and re-allege Paragraphs 1-180 as if fully set forth herein verbatim.

182.

Defendant OLSEN's unlawful shooting and killing of Mr. HILL was intentional, egregious and without provocation or justification.

183.

As a direct and proximate result of Defendant OLSEN's unlawful shooting and killing of Mr. HILL as previously described herein, Defendant OLSEN is liable to Plaintiffs.

184.

Pursuant to O.C.G.A. §§ 51-4-5 and 19-7-1(c)(1), Plaintiffs are entitled to recover from Defendant OLSEN an amount to be determined by the enlightened conscience of the jury as damages for the full value, including the economic value, of the life of Mr. HILL, to be proven at trial.

**WHEREFORE**, Plaintiffs pray:

- For an award of compensatory and punitive damages against Defendant OLSEN in an amount to be determined at trial;

- For an award of attorney's fees and the costs of maintaining this action;

- For a trial by jury of all issues triable as of right by a jury; and

- For such other and further relief as may be just and warranted.

## PRAYER FOR RELIEF AS TO ALL CAUSES OF ACTION

**WHEREFORE**, Plaintiffs pray for the following relief:

- That Plaintiffs recover for the deprivation of Anthony Hill's civil rights and liberties in an amount to be determined by the enlightened conscience of a jury;

- That Plaintiffs recover for Anthony Hill's death in an amount to be determined by the enlightened conscience of the jury;

- That Plaintiffs recover punitive damages in an amount to be determined by the enlightened conscience of a jury;

- That Plaintiffs recover reasonable attorney's fees and costs of litigation as allowed under 42 U.S.C. § 1988 and state law;

- That Plaintiffs are given equitable and injunctive relief to enjoin the Defendants from implementing policies, practices and customs of disregarding the medical needs of detainees with medical health issues; and

- That Plaintiffs recover such other and further relief as is just and proper; and that all issues be tried before a jury.

This 8th day of March, 2017.

Respectfully submitted,

**THE CHESTNUT FIRM, LLC**

/s/ *Jule Lassiter*
Georgia Bar No.: 438581
303 Peachtree Street NE, Suite 4150
Atlanta, GA 30308
TELEPHONE (470) 428-2120
FACSIMILE (855) 377-2667
jule.lassiter@chestnutfirm.com
*Attorney for Plaintiffs*